ELLIS, Judge.
On July 11, 1949 at approximately 7:40 A.M. a Chevrolet Coupe owned and being driven by one Henry Kozak and occupied by the latter and a young lady guest was traveling on U. S. Highway 90 from New Iberia to Lafayette in a westerly direction, and was being followed by a pickup truck belonging to the plaintiff, Sliman Brothers Amusement Company, and being driven by Fred Sliman, Jr., plaintiff’s employee, and coming in the opposite direction traveling east was a Ford panel truck belonging to Morgan Supply House, Inc., and being driven by its employee. The plaintiff alleged that the Morgan Supply House truck “apparently for the purpose of avoiding a collision with the ‘Henry Kozak coupe’ veered his truck to his right or to the south shoulder”, and that due to the excessive rate of speed and while attempting to return the Morgan truck onto the concrete slab, the driver caused the truck to swerve to the center of the highway and over into the north lane of traffic on which petitioner’s truck was proceeding, and that the result was a collision in plaintiff’s north lane of traffic. Plaintiff accordingly has sued the Morgan Supply House, Inc., its insurer, Midwestern Insurance" Company, and the New Amsterdam Casualty Company, the insurer of Henry Kozak.
The Morgan Supply House, Inc., and its insurer, Midwestern Insurance Company, filed an answer in the nature of a general denial to the material allegations but admitted the quoted allegation and further alleged that immediately upon pulling off on to the shoulder, in order to avoid striking a pole he had to cut sharply back to his *208 left onto the concrete, and that he lost control of the truck. In the alternative they specifically plead contributory - negligence on the part of the driver of plaintiff’s truck.
The New Amsterdam Casualty Company denied that the Kozak coupe had come over the center line and forced the Morgan truck off of the highway and charged the latter truck with driving at an excessive rate of speed and losing control of his vehicle and that, therefore, the accident occurred solely through the fault and negligence of the driver of the Morgan Supply House truck.
After trial, for oral reasons dictated into the record the District Court rendered judgment in favor of the plaintiff against the New Amsterdam Casualty Company (Kozak’s insurer) in the sum of $720, and taxed % of the costs against the defendant, New Amsterdam Casualty Company, and against the plaintiff. The District Court found that Kozak’s automobile forced the Morgan Supply House truck off the concrete section of the highway by veering to its left, and that the driver of the Morgan Supply House truck, being confronted with a post on the shoulder of the highway, was forced to cut back sharply onto the concrete section and, therefore, held that the accident was the result of the movement of Kozak’s automobile, which created an emergency to the Morgan Supply House truck driver. The Court further rendered judgment in favor of the Morgan Supply House, Inc., and its insurer, Midwestern Insurance Company, dismissing plaintiff’s suit as to both.
The New Amsterdam Casualty Company has appealed from this judgment and the plaintiff has answered the appeal in which it asked for an increase in the judgment to $1,070 and also asked for a judgment against the Morgan Supply House, Inc., and its insurer, all in solido, and, further, contends that the Court is in error in assessing the plaintiff-appellee with 14 of the costs.
It is the contention of the New Amsterdam Casualty Company that the judgment of the District Court is erroneous in two respects: (1) that Kozak “did not force the Morgan Supply House truck off the highway but that it left the concrete section for some unaccountable reason, and (2) that the accident was caused by the negligence of the Morgan truck driver in veering sharply back onto the concrete slab when he had a clear, level, gravelled shoulder at least eight feet wide upon which he could have travelled until he brought his truck under control before seeking to return on the concrete slab; and accordingly, the negligence of the Morgan truck driver is the proximate cause of the accident.”
There is no dispute that the Kozak coupe was proceeding in a westerly direction on Highway 90, followed by the plaintiff’s truck, and .that they were travelling 40 or 50 miles per hour which was not an excessive speed on this highway during the daylight hours when the road was dry. The District Court found that the plaintiff’s truck was following the Kozak coupe at approximately 100 feet, however, we believe this to be an error as the- only definite testimony is to the effect that it was following at a distance of 100 yards or 300 feet.
It is not disputed that the young lady who was in the car with Kozak at the t-ime of the accident was employed at a night club operated by the driver of the plaintiff’s truck, Fred Sliman, Jr., and that Ko-zak had come to the club at approximately 1 A.M. and had had some drinks — the number is not definite — but apparently he was not drunk at the time of the accident, and had remained until 7:00 A.M. when he left with the young lady, followed by the Sliman truck.
The driver of the Morgan Supply House truck testified that as he got close to the Kozak coupe, Kozak came over the center line into his lane of traffic, creating an emergency which forced him, in order to avoid a collision, to veer sharply to his right onto the shoulder of the highway, arid that it was then necessary in order for him to avoid striking a pole to veer sharply back onto the concrete which caused him to lose control of his truck and strike and collide with the plaintiff’s truck. Kozak specifically denied that he forced the Mor *209 gan Supply House truck off the highway, and it is admitted that unless it was forced off by Kozak its actions are unaccountable.
Fred Sliman, Jr., driver of plaintiff’s truck, testified that he did not see Kozak veer to his left, however, in plaintiff’s petition such a fact is alleged, supra. It is suggested that counsel for plaintiff may have inserted such an allegation entirely of his own accord, however, we are not impressed with this argument. We believe it fairly • reasonable to assume that counsel for plaintiff obtained such information from his client or from Fred Sliman, Jr., driver of plaintiff’s truck.
The young lady’s testimony at the time of the trial had somewhat changed. On October 21, 1949 she gave a written, signed statement in which she stated that she had read the statement and found it to be true' and correct, and this statement contained the following:
“As I recall, Mr. Kozak' may have' been sort dozing at the wheel and was a little to the left of the center dividing line of the pavement and when the eastbound panel truck was about to meet Mr. Kozak’s car he pulled to his right and the right wheel of panel truck dropped off the edge of the .pavement and evidently when the driver tried to get back on the.pavement he lost control of his truck and collided with a pick up truck that was traveling west behind Mr. Kozak’s car. The first I knew of the accident was when I heard the crash at that time I should judge we were about a block from where the accident occurred. * * *”
On April 5, 1950 this young lady gave another statement in which she stated: “I, therefore, cannot tell whether or not Mr. Kozak went across the center line as contended by the driver of the Morgan truck, as I was not watching the road, but I do not believe he did as he did not swerve his automobile at all. * * *”
On the trial of the case when asked if Kozak’s automobile crossed the center line she answered: “I am just not positive. I don’t recall today”. We think that her first statement is entitled to the greater weight and is corroborative of the testimony of the driver of the Morgan truck.
In addition, there is in the record the testimony of a police officer who stated that he would not testify that Kozak was intoxicated or drunk but that he did smell whiskey on his breath and that he looked tired and sleepy, which would be natural, even though he testified he had slept from 6:30 until 12:00 before coming to the night club. The testimony of Kozak and Fred Sliman, Jr., was taken by deposition. It is shown that the driver of the Morgan truck had had a good night’s rest and had reported for work at approximately 7:00 A.M.
Taking all the testimony into consideration, we do not find that the District Judge committed manifest error in finding that Kozak did come over the center line and force the driver of the Morgan truck off of the highway.
As to appellant’s second contention that the driver of the Morgan truck was not confronted with any pole or obstruction and should have remained on the shoulder of the road until he had full control of his truck so that he could safely return to the concrete, there was offered the testimony of a witness who lived close to the scene of the accident and who had measured certain distances. It is shown that the Morgan truck left the concrete highway close to a side road which crossed the railroad tracks and, as a matter of fact, the accident happened close to this side road on the opposite side of Highway 90. It was shown that close tq this side road and nine feet from the edge of the concrete pavement to the south was a mail box, and fifteen feet to the south of the highway in a ditch or sloping ditch was a pole, and a distance of 11 feet south of the highway and slightly closer to the west edge of the side road was a railroad sign. It is, therefore, the appellant’s contention that with these objects at such a distance from the pavement the driver of the Morgan truck could and should have proceeded straight down the shoulder. The explanation given by the driver of the Morgan truck as to why he did not stay on the shoulder was reason *210 able. He stated that when Koza'k’s automobile came across the highway he was near this intersecting side road and he was forced to veer sharply to his right or south, and that in order to avoid striking a pole he pulled sharply back to the right ' and, therefore, onto the pavement which caused him to lose control. The pole which the driver of the Morgan truck was trying to avoid is not identified by him and he was not cross-examined specifically as to which one of the poles — the one holding the mail box, the railroad sign, or just a big pole- — -he was trying to avoid. If, as testified to by the driver of the Morgan truck, he went off of the highway close to this side road at a sharp angle his explanation of why he pulled sharply back toward and on the concrete is reasonable. Nine feet or eleven feet from the concrete is a very short distance, and if the Morgan truck was headed straight toward a pole at that distance when it went off the pavement, ' the driver of the truck would of necessity be forced to take immediate action by veering sharply to his left in order to avoid striking such an object.
Counsel for appellant stresses -the approximate 300-foot distance which it is shown the plaintiff’s truck was behind the Kozak car, but the testimony also shows that the plaintiff’s truck and the Kozak car were traveling from 40 to 50 miles per hour, and at the time the Morgan truck was forced off of this highway by the Ko-zak coupe, it was traveling approximately 40 miles per hour, and the testimony of the driver of the truck is that when it veered sharply back to its left it had slowed down to 25 or 30 miles per hour. Taking the distances shown and the speed of the plaintiff’s truck and the Morgan truck, there would only have been approximately two seconds from the time the Morgan truck left the pavement until the collision occurred.
The burden of proof was upon the plaintiff, and the District Court evidently did not believe that it had borne this burden but accepted the testimony of the driver of the Morgan truck that Kozak veered to his left, creating an emergency and that it was, therefore, necessary for the Morgan truck to be veered sharply to its right onto the shoulder, and in order to avoid striking some kind of pole it was necessary to veer it sharply back to its left onto the concrete and that there was no negligence under the facts and circumstances of this case committed by the driver of the Morgan truck. Also corroborative of the version of the accident as given by the driver of the Morgan truck is the fact that as soon as Kozak stopped his car and went back to the scene of the accident he was immediately accused by the driver of the Morgan truck of crowding him which Kozak denied.
Able counsel for the appellant has cited a number of cases which to be applicable to the case at bar depended upon a finding of fact favorable to appellant on both of his contentions in this case. In view of the fact that both contentions have been answered unfavorably, a discussion of these cases is unnecessary.
On the answer to the appeal, we are of the opinion that the District Judge was in error in taxing 54 °f the costs against the plaintiff-appellee .and that the costs should be borne by appellant, New Amsterdam Casualty Company, and, further, that the only damages proven to legal certainty was the amount necéssary to repair the truck, viz., $720, for which the District Court awarded judgment.
It' is, therefore, ordered that the judgment of the District Court- be amended by awarding judgment in favor of the plaintiff and against the defendant for all costs, and as thus amended the judgment is affirmed.